UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW PORONTO,

    Plaintiff,

v.

T.D. HOIST, et al.,

    Defendants.

Case No. 24-cv-10522

Honorable Robert J. White

**OPINION AND ORDER DENYING NURSES BREEN AND DEBUS'S MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT**

I.    Introduction

    Andrew Poronto commenced this 42 U.S.C. § 1983 action against, among others, Wellpath, LLC and two of its nurse employees, Sara Breen and Kenneth Debus. The amended complaint alleges that Breen and Debus exhibited deliberate indifference to Poronto's underlying seizure condition while he was incarcerated at the Macomb County jail, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. It also alleges that the nurses engaged in medical malpractice and committed gross negligence when they failed to provide Poronto with appropriate medical care.

Before the Court is the nurses' motion to dismiss the claims asserted against them in second amended complaint. (ECF No. 55). Poronto responded in opposition. (ECF No. 60). The parties incorporate by reference the briefs they submitted previously regarding the nurses' earlier motion to dismiss the first amended complaint. (ECF Nos. 21, 23, 25). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is denied.

II.  Background

    *A.  Factual History*

Poronto suffers from a "chronic seizure disorder." (ECF No. 53, PageID.760, ¶ 14). He takes several prescription medications to prevent seizures. (*Id.*, PageID.760, 762, ¶¶ 14, 16). On April 13, 2022, Macomb County Sheriff's deputies arrested Poronto after a domestic altercation at his residence. (*Id.*, PageID.760, ¶ 14). The deputies who transported him to the Macomb County jail did not permit him to bring along his medications. (*Id.*). During intake at the jail, Poronto informed the nursing staff about his condition, identified his medications, and the appropriate dosages. (*Id.*).

Later that same day, Poronto's father called the jail and spoke with Breen. (*Id.*, PageID.761, ¶ 15). He told her about Poronto's condition, his medications, and the need to take them daily. (*Id.*). Breen asked Poronto's father to deliver the

2

medications to the jail. (*Id.*). But when he arrived at the facility, Debus refused to accept them because of jail policies forbidding the distribution of outside medications. (*Id.*). Breen drafted a progress note summarizing her telephone conversation with Poronto's father and indicated that Poronto "has a severe seizure condition." (*Id.*, PageID.763, ¶ 17). She also informed the "booking nurse" about Poronto's condition and his medication regimen. (*Id.*). Debus appears to have authored a memorandum to jail supervisors recommending that staff institute seizure precautions for Poronto during his incarceration. (*Id.*, PageID.762, ¶ 16). Neither Breen nor Debus took any additional measures to further Poronto's care. (*Id.*, PageID.763, 765-68, ¶¶ 19, 26, 29, 33).

The next day, at approximately 1:11 A.M., Poronto suffered a seizure while housed in the general population unit. (*Id.*, PageID.763, ¶ 19). During the seizure, Poronto fell to the floor, hit his head, and suffered a concussion, brain damage, and fractures to his face and shoulder. (*Id.*, ¶¶ 19-20). After jail medical staff evaluated him, deputies transported Poronto to McLaren Macomb Hospital for treatment. (*Id.*, PageID.763-64, ¶¶ 19, 22).

  B. *Procedural History*

Poronto initially filed this lawsuit against, among others, Wellpath, Breen, and Debus. (ECF No. 1). The first amended complaint alleged violations of the Eighth and Fourteenth Amendments as well as causes of action for medical malpractice and

3

gross negligence. (ECF No. 15). The nurses moved to partially dismiss the first amended complaint in April 2024. (ECF No. 21). The case was stayed in November 2024 after Wellpath filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. (ECF 28-1, PageID.304-42).

In September 2025, this Court granted Poronto's motion for relief from the bankruptcy stay to pursue his claims against Breen and Debus (ECF No. 45), granted him leave to file a second amended complaint (ECF No. 52), and consolidated this case with a separate lawsuit Poronto had filed against another Wellpath nurse, Mary Krause, stemming from the same operative facts.[1] (ECF No. 46).

The Court terminated Breen and Debus's previous motion to partially dismiss the first amended complaint after Poronto filed a second amended complaint. (ECF No. 53; Sep. 29, 2025 Text-Only Order). They now move to dismiss the causes of action asserted against them in second amended complaint for failing state a plausible claim for relief. (ECF No. 55).

---

[1] The complaint from the consolidated case alleges that Poronto suffered another seizure on April 15 after he returned to the jail from McLaren Macomb Hospital. (Case No. 24-13197, ECF No. 1, PageID.8, ¶¶ 20-21). This allegation is omitted from the second amended complaint.

4

III. <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

IV. <u>Analysis</u>

    A. *Fourteenth Amendment Deliberate Indifference*

Poronto was a pretrial detainee at the time of his incarceration at the Macomb County jail because "a court had yet to try or punish him." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024). Pretrial detainees possess a Fourteenth Amendment right not to be "deprive[d]" of their "life" or "liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. This right, at the very least, mirrors "those afforded convicted prisoners under the Eighth Amendment." *Lawler*, 93 F.4th at 926; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998).

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated individuals. U.S. Const. amend. VIII;

5

*United States v. Campbell*, 245 F. App'x 505, 508 (6th Cir. 2007).  The amendment bars prison officials from "unnecessarily and wantonly inflicting pain" on inmates by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quotation omitted).  Deliberate indifference may take the form of delayed medical treatment, *id.* at 899, inadequate treatment, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448-449 (6th Cir. 2014).

     To establish a plausible Fourteenth Amendment deliberate indifference claim, pretrial detainees must allege (1) that they suffered from an objectively "serious medical need," and (2) that "each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023); *see also Brawner v. Scott Cnty.*, 14 F.4th 585, 596-97 (6th Cir. 2021).  In plain terms, jail medical staff must recognize the potential for harm to the detainee – either through actual or imputed (because the risk is so obvious) knowledge – and then recklessly fail to prevent or avert that same harm.[2]

---

[2] Poronto alleges violations of the Eighth and Fourteenth Amendments. (ECF No. 53, PageID.764).  The Eighth Amendment is inapplicable, however, because Poronto was a pretrial detainee when the alleged constitutional violations occurred.  And "the Eighth Amendment's protections apply specifically to post-conviction inmates." *Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016).

6

1. The Objective Prong

The objective element in a deliberate indifference claim requires a showing that the pretrial detainee faced a "substantial risk of serious harm" before suffering an injury. *Lawler*, 93 F.4th at 928; *see also Farmer*, 511 U.S. at 834. Detainees may satisfy the objective prong if they have a serious medical need or condition. *See Lawler*, 93 F.4th at 928. Objectively serious medical conditions are ones that a physician has diagnosed "as needing treatment" or ones that are so obviously serious "that even a lay person would easily recognize the necessity for a doctor's attention." *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (citation omitted).

Poronto plausibly alleges that he suffers from a serious medical condition. (ECF No. 53, PageID.757, 765-66 ¶¶ 4, 24, 27). The second amended complaint states that Poronto has a "chronic seizure disorder," which physicians treated with several prescription drugs. (ECF No. 53, PageID.760-62, ¶¶ 14, 16-17). And it alleges that Poronto's medications could "not be discontinued abruptly" and that "[m]issing any doses could cause seizure or make the person more susceptible to his seizure disorder." (*Id.*, PageID.761, ¶ 14).

Taken together, these averments plausibly demonstrate that Poronto suffered from a serious medical condition that required strict adherence to prescription drug treatments. *See Shreve v. Franklin Cnty.*, 743 F.3d 126, 135 (6th Cir. 2014) (stating that a seizure disorder constitutes a serious medical condition); *see also Meeks v.*

7

*Skipper*, No. 21-1587, 2022 U.S. App. LEXIS 12516, at *8 (6th Cir. May 9, 2022) (holding that a seizure disorder "at least arguably" qualifies as a serious medical condition); *Esch v. Cnty. of Kent*, 699 F. App'x 509, 516 n.5 (6th Cir. 2017) (holding that "seizure condition indisputably met [the] qualification" of an "objectively serious condition").

    2.    The Subjective Prong

Courts "must address the subjective component" for each jail official "individually." *Burwell*, 7 F.4th at 466; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). In this regard, Poronto asserts that:

- He informed jail nursing staff at intake that he suffered from epilepsy and that physicians had prescribed him anti-seizure medication. (ECF No. 53, PageID.761-62, ¶¶ 14, 16).

- He told jail nursing staff that he last took his medication the previous day, April 12. (*Id.*, PageID.762, ¶ 16).

- His father, Paul Poronto, called the jail and spoke with Breen. He informed Breen about Poronto's anti-seizure medications. She requested that he bring the medications to the jail. (*Id.*, PageID.761, ¶ 15).

- When Poronto's father arrived at the jail, Debus told him that he could not administer medications delivered from outside the facility. Debus assured Poronto's father that other medications "would be provided" to Poronto. (*Id.*).

- Poronto's father advised Debus that "it was imperative for [Poronto] to take the medications on a daily basis and not miss any doses to prevent seizure." (*Id.*, PageID.761-62, ¶ 15).

8

- He also informed Debus that Poronto had last taken the medication on April 12 (the previous day) and that failing to take the medication would increase the likelihood Poronto could experience a seizure. (*Id.*, PageID.762, ¶ 15).

- Debus appears to have authored an April 13 memo recommending that jail staff institute seizure precautions for Poronto during his incarceration. (*Id.*, PageID.762, ¶ 16).

- Breen appears to have authored an April 13 progress note summarizing her telephone conversation with Poronto's father and indicating that Poronto "has a "severe seizure condition." The note says that Breen informed the "booking nurse" about Poronto's condition and his medication regimen. (*Id.*, PageID.763, ¶ 17).

- Neither Breen nor Debus personally followed-up to ensure (1) that jail staff actually followed seizure protocols during Poronto's incarceration, or (2) that he actually received the medications necessary to treat his condition. (*Id.*, PageID.763, 765-68, ¶¶ 19, 26, 29, 33).

- Poronto suffered a seizure on April 14 at approximately 1:11 A.M. He fell to the floor, hit his head, and suffered a concussion, brain damage, and fractures to his face and shoulder. (*Id.*, PageID.763, ¶ 19).

- The following day, a nurse at the jail called Poronto's father to deliver Poronto's anti-seizure medication to the facility. Jail personnel took possession of the medication and nurses administered it to Poronto, who "suffered no further seizures following his release from the jail." (*Id.*, PageID.763-64, ¶ 21).

Because these allegations indicate that Breen and Debus knew about Poronto's seizure condition yet failed to take any active measures to (1) prevent him from having a seizure, or (2) ameliorate the risk of injury to him in the event he

9

suffered one, they plausibly establish that both nurses "acted recklessly in the face of an unjustifiably high risk of harm" that was "so obvious" it should been known to them. *Helphenstine*, 60 F.4th at 317.

The nurses contest this result. They insist that documenting Poronto's condition and placing him under seizure protocols is enough to insulate them from liability for deliberate indifference *as a matter of law*. (ECF No. 25, PageID.281). And they attempt to cast doubt on whether they could have believed Poronto's father's representations about his own identity as well as the nature and severity of Poronto's seizure condition. (ECF No. 21, PageID.197).

But whether Breen and Debus did enough to prevent Poronto from having a seizure, or injuring himself during such an episode, raises a factual question that is more appropriate for summary judgment. Discovery into, among other things, the conditions of Poronto's incarceration at the jail, the extent of the nurses' interactions with him, and the scope of their authority to implement and oversee seizure precautions are all necessary to determine whether their conduct comported with the Fourteenth Amendment's deliberate indifference standard.

Whether the nurses possessed sufficient information to doubt Poronto's father's identity, along with the veracity of his statements regarding Poronto's condition, is likewise improper. At this stage in the litigation, the Court must construe Poronto's allegations in *his* favor and accept any plausible allegations "as

10

true." *Daunt*, 999 F.3d at 308.  So Poronto's allegations that (1) his father called the jail, (2) that his father informed Breen about Poronto's seizure condition, the importance of administering his medication timely, and when he last took the medication, and (3) that Debus refused to accept the medication Poronto's father personally delivered to the jail, must be taken as fact.

Since the second amended complaint adequately demonstrates that Breen and Debus exhibited deliberate indifference to Poronto's seizure condition, the Fourteenth Amendment claim is plausible enough to withstand Rule 12(b)(6) dismissal.

### B. *Gross Negligence*

The nurses further contend that the gross negligence claim must be dismissed because Michigan law does not recognize that tort as an independent cause of action. (ECF No. 21, PageID.201). *See Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). They maintain that gross negligence may only be asserted in avoidance of Michigan's governmental immunity statute. (*Id.*, PageID.202). *See Bletz*, 641 F.3d at 756.  This argument misconstrues state law.

Granted, Michigan courts typically rebuff "attempts to transform claims involving elements of *intentional torts* into claims of gross negligence." *Miller v. Sanilac Cty.*, 606 F.3d 240, 254 (6th Cir. 2010) (emphasis added).  But only where the underlying facts evince intentional conduct have courts ruled that no independent

cause of action for gross negligence exists. *See Bletz*, 641 F.3d at 756; *see also Presnall v. Huey*, 657 F. App'x 508, 513 (6th Cir. 2016) ("Gross negligence is not an independent cause of action when the underlying claim is an intentional shooting of a suspect by an officer.") (quotation omitted). The more accurate (and correct) statement of the law is that "plaintiffs are barred from bringing gross-negligence claims only if those claims are *fully premised* on alleged intentional torts." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 700-01 (6th Cir. 2018) (quotation omitted) (emphasis added); *see also Richards v. Peters*, 788 F. App'x 324, 336-37 (6th Cir. 2019); *Presnall*, 657 F. App'x at 513; *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004). Not to mention, the United States Court of Appeals for the Sixth Circuit has previously "sustained gross-negligence claims" where, as in this case, "the plaintiff can otherwise show that the defendant owed him a duty of care." *Richards*, 788 F. App'x at 336-37 (quotation omitted); *see also Brent*, 901 F.3d at 701.

Because Poronto's theory of recovery is that the nurses recklessly failed provide him with the appropriate standard of care – not that they harmed him intentionally – the gross negligence claim may proceed as an independent cause of action. (ECF No. 53, PageID.774-75, ¶¶ 56-58). Accordingly,

13

IT IS ORDERED that Breen and Debus's motion to partially dismiss the second amended complaint (ECF No. 55) is denied.

Dated: December 29, 2025

s/ Robert J. White
Robert J. White
United States District Judge

13