UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW PORONTO,

    Plaintiff,

v.

T.D. HOIST, et al.,

    Defendants.

Case No. 24-cv-10522

Honorable Robert J. White

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART WELLPATH'S MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT**

I.    Introduction

Andrew Poronto commenced this 42 U.S.C. § 1983 action against, among others, Wellpath, LLC and three of its nurse employees. The amended complaint alleges that Wellpath's failure to properly train and supervise its nurses resulted in Poronto experiencing two seizures while he was incarcerated at the Macomb County jail. Poronto alleges that Wellpath violated the Eighth and Fourteenth Amendments to the United States Constitution and that it is vicariously liable for the nurses' medical malpractice and gross negligence.

Before the Court is Wellpath's motion to dismiss the claims asserted against it in second amended complaint. (ECF No. 56). Poronto responded in opposition.

(ECF No. 59). The parties incorporate by reference the briefs they submitted previously regarding Wellpath's earlier motion to dismiss the first amended complaint. (ECF Nos. 22, 24, 26). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is granted in part and denied in part.

II.     Background

    A.     *Factual History*

Poronto suffers from a "chronic seizure disorder." (ECF No. 53, PageID.760, ¶ 14). He takes several prescription medications to prevent seizures. (*Id.*, PageID.760, 762, ¶¶ 14, 16). On April 13, 2022, Macomb County Sheriff's deputies arrested Poronto after a domestic altercation at his residence. (*Id.*, PageID.760, ¶ 14). The deputies who transported him to the Macomb County jail did not permit him to bring along his medications. (*Id.*). During intake at the jail, Poronto informed the nursing staff about his condition, identified his medications, and the appropriate dosages. (*Id.*).

Later that same day, Poronto's father called the jail and spoke with Wellpath nurse Sara Breen. (*Id.*, PageID.761, ¶ 15). He informed her about Poronto's condition, his medications, and the need to take them daily. (*Id.*). Breen asked Poronto's father to deliver the medications to the jail. (*Id.*). But when he arrived at the facility, another Wellpath nurse, Kenneth Debus, refused to accept them because

2

of jail policies forbidding the distribution of outside medications. (*Id.*). Breen drafted a progress note summarizing her telephone conversation with Poronto's father and indicated that Poronto "has a severe seizure condition." (*Id.*, PageID.763, ¶ 17). She also informed the "booking nurse" about Poronto's condition and his medication regimen. (*Id.*). Debus appears to have authored a separate memorandum to jail supervisors recommending that staff institute seizure precautions for Poronto during his incarceration. (*Id.*, PageID.762, ¶ 16). Neither Breen nor Debus took any additional measures to further Poronto's care. (*Id.*, PageID.763, 765-68, ¶¶ 19, 26, 29, 33).

On April 14, at approximately 1:11 A.M., Poronto suffered a seizure while housed in the general population unit. (*Id.*, PageID.763, ¶ 19). During the seizure, Poronto fell to the floor, hit his head, and suffered a concussion, brain damage, and fractures to his face and shoulder. (*Id.*, ¶¶ 19-20). After jail medical staff evaluated him, deputies transported Poronto to McLaren Macomb Hospital for treatment. (*Id.*, PageID.763-64, ¶¶ 19, 22).

B.   *Procedural History*

Poronto initially filed this lawsuit against, among others, Wellpath, Breen, and Debus. (ECF No. 1). The first amended complaint alleged that Wellpath (1) failed to institute policies to train and supervise its nurses in appropriate protocols for dispensing necessary prescription drugs to pretrial detainees, and (2) is vicariously

3

liable for the nurses' medical malpractice and gross negligence. (ECF No. 15). Wellpath moved to partially dismiss the first amended complaint in April 2024. (ECF No. 22). The case was stayed in November 2024 after Wellpath filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. (ECF 28-1, PageID.304-42).

In September 2025, this Court granted Poronto's motion for relief from the bankruptcy stay to pursue his claims against Breen and Debus (ECF No. 45), granted him leave to file a second amended complaint (ECF No. 52), and consolidated this case with a separate lawsuit Poronto had filed against another Wellpath nurse, Mary Krause, stemming from the same operative facts.[1] (ECF No. 46).

The Court terminated Wellpath's previous motion to partially dismiss the first amended complaint after Poronto filed a second amended complaint. (ECF No. 53; Sep. 29, 2025 Text-Only Order). Wellpath now moves to dismiss the causes of action asserted against it in second amended complaint for failing state a plausible claim for relief.[2] (ECF No. 56).

---

[1] The complaint from the consolidated case alleges that Poronto suffered another seizure on April 15 after he returned to the jail from McLaren Macomb Hospital. (Case No. 24-13197, ECF No. 1, PageID.8, ¶¶ 20-21). This allegation is omitted from the second amended complaint.

[2] Although Wellpath asks the Court to dismiss the "negligence claims," the second amended complaint asserts only two causes of action against Wellpath – (1) a 42 U.S.C. § 1983 *Monell* claim (Count II), and (2) a medical malpractice claim (Count III). (ECF No. 53, PageID.769-74, ¶¶ 39-53). The gross negligence claim does not

4

III. <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). On a Rule 12(b)(6) motion, federal courts may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

IV. <u>Analysis</u>

   A.   *Fourteenth Amendment Deliberate Indifference Overview*

Poronto was a pretrial detainee at the time of his incarceration at the Macomb County jail because "a court had yet to try or punish him." *Lawler v. Hardeman*

---

appear to be asserted against Wellpath. (*But see id.*, PageID.774, ¶ 56). Insofar as Wellpath seeks dismissal of that cause of action, its supporting arguments are so undeveloped that they are practically indiscernible. (ECF No. 22, PageID.226-27). The Court, therefore, denies the portion of the motion seeking to dismiss the gross negligence claim as waived. *See Marvaso v. Sanchez*, 971 F.3d 599, 610 n.4 (6th Cir. 2020) ("[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

5

*Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024).  Pretrial detainees possess a Fourteenth Amendment right not to be "deprive[d]" of their "life" or "liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.  This right, at the very least, mirrors "those afforded convicted prisoners under the Eighth Amendment." *Lawler*, 93 F.4th at 926; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998).

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated individuals. U.S. Const. amend. VIII; *United States v. Campbell*, 245 F. App'x 505, 508 (6th Cir. 2007).  The amendment bars prison officials from "unnecessarily and wantonly inflicting pain" on inmates by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quotation omitted).  Deliberate indifference may take the form of delayed medical treatment, *id.* at 899, inadequate treatment, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448-449 (6th Cir. 2014).[3]

---

[3] Poronto alleges violations of the Eighth and Fourteenth Amendments. (ECF No. 53, PageID.764).  The Eighth Amendment is inapplicable, however, because Poronto was a pretrial detainee when the alleged constitutional violations occurred.  And "the Eighth Amendment's protections apply specifically to post-conviction inmates." *Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016).

B.     *Monell Liability*

As a private entity that contracts to provide medical services at a jail, Wellpath can be subject to 42 U.S.C. § 1983 liability because it is carrying out a traditional state function. *See Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018). Like municipalities, government contractors "cannot be held liable on a *respondeat superior* theory," but only "for a policy or custom *of that private contractor*." *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original). The plaintiff must show that the policy or custom violates a federal right. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 694 (1978).

Poronto may establish *Monell* liability through (1) the existence of an illegal official policy or legislative enactment, (2) an official with final decision-making authority who ratifies illegal actions, (3) the existence of a policy of inadequate training or supervision, or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Poronto's theories of liability fall within two main categories: (1) that Wellpath's policies governing the distribution of essential prescription medications obtained from outside the Macomb County jail are constitutionally inadequate; and (2) that Wellpath failed to train and supervise its nurses to provide pretrial detainees with these medications in a timely manner. (ECF No. 53, PageID.769-771, ¶¶ 39-46).

7

1. Illegal Policy

To sustain an illegal policy claim under *Monell*, Poronto must plausibly establish the existence of a policy, connect that policy to Wellpath, and plausibly demonstrate that the policy's execution is what caused his injuries. *See Morgan v. Wayne Cnty.*, 33 F.4th 320, 328-29 (6th Cir. 2022); *see also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). Poronto must plausibly show that Wellpath "itself, through its policy or practice," violated his Fourteenth Amendment rights by "manifesting deliberate indifference" to his seizure condition. *See Morgan*, 33 F.4th at 329. In this respect, the policy itself must be facially deficient. *See id.*

Wellpath submitted a copy of its policy governing the "Timely Initiation of Medication Upon Arrival" at the Macomb County jail.[4] (ECF No. 48-1, PageID. 717-20). The policy states, in relevant part, that home medications are prohibited for distribution except for "High-Priority medications that are not readily available and

---

[4] The Court may consider this document because it is "referred to" in the second amended complaint and "central to the claims contained therein." *Bassett*, 528 F.3d at 430 (cleaned up). (ECF No. 53, PageID.769-70, ¶¶ 42, 46). It may also consider this document even though it was solely attached to Wellpath nurse, Mary Krause's motion to dismiss the second amended complaint. (ECF No. 48-1, PageID.717-20). *See, e.g., Skinner v. Colonial Claims, LLC*, No. 17-00115, 2018 U.S. Dist. LEXIS 93753, at *5 n.4 (N.D. Ala. Jun. 4, 2018) (considering an insurance policy "attached to a previous motion to dismiss filed by one defendant when resolving a current motion for judgment on the pleadings filed by a another defendant."); *Bullock v. JPMorgan Chase Bank, N.A.*, No. 15-0909, 2016 U.S. Dist. LEXIS 19430, at *1 n.1 (D. Md. Feb. 18, 2016) (reviewing documents attached to the defendant's previous motion to dismiss when resolving its renewed motion to dismiss the amended complaint).

have been verified." (*Id.*, PageID.719, ¶ 6.4). The policy defines "High-Priority medications" as "those medications which should not be interrupted because of their clinical necessity and which have short enough half-lives such that routine initiation within 24 hours of intake may not be quick enough for appropriate continuity of care." (*Id.*, PageID.717, ¶ 3). It defines "verified medications" as "those medications that have verbal or written documentation from [a] prescribing or dispensing source that patient is currently taking medications." (*Id.*). And it instructs Wellpath nurses that:

> Whenever possible, ongoing treatment regimens currently employing these medications should be continued without a single missed dose, whether the listed medication or a therapeutic substitution is provided.
>
> Every effort should be made to administer a High-Priority medication by the next scheduled dose after notification of the medication by the patient, but no later 24 hours after notification of the medication to the health care staff (unless unable to obtain due to backup pharmacy availability.) The High-Priority medication verification should be attempted with a telephonic communication. If the medication cannot be verified during the first attempt by telephone, the provider should be contacted for review.

(*Id.*, PageID.718, ¶ 6.1). The policy even designates two "local back up" pharmacies in the event High-Priority medications cannot be obtained "through [a] contracted pharmacy with expected delivery within 24 hours. (*Id.*, PageID.717-18, ¶ 3).

Altogether, Wellpath's policy is a "clear attempt" to ensure the continued administration of vital medications to pretrial detainees. *Morgan*, 33 F.4th at 329.

And insofar as Poronto maintains that Wellpath nurses violated the policy, that contention "alone" cannot establish the policy's facial invalidity. *Id.*; *see also Winkler*, 893 F.3d at 901.

What is more, the second amended complaint fails to (1) allege that Wellpath's policy injured other pretrial detainees at the jail previously, or (2) raise a plausible inference that Wellpath somehow "knew its policy was ineffective." *Morgan*, 33 F.4th at 329. So, for all these reasons, Poronto's illegal policy theory is not cognizable under *Monell*.

        2.     Failure to Train or Supervise

Turning to Poronto's second theory, a private contractor's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). There are two ways to demonstrate that a contractor failed to train or supervise its employees. The first method is where the plaintiff shows a "pattern of similar constitutional violations by untrained employees" and the contractor's "continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (cleaned up). These two elements demonstrate "the deliberate indifference necessary to trigger municipal liability." *Id.*

The second method is where the plaintiff points to "a single violation of federal rights, accompanied by a showing that the [contractor] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* at 739 (cleaned up). This alternative is open "in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Id.* at 739 (cleaned up).

Since Poronto does not identify a "pattern of similar constitutional violations" (ECF No. 53, PageID.770, ¶ 44), he must resort to the second method by plausibly demonstrating that (1) a single violation occurred, *i.e.*, the deliberate indifference to Poronto's serious medical condition, (2) the type of violation is a recurring situation, and (3) the type of violation raises the obvious potential for a constitutional violation. *Id.* With respect to the last prong, "the plaintiff has the burden of showing two layers of obviousness: It must be obvious that the failure to train will lead to certain conduct, and it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights." *Martinez v. Wayne Cnty.*, 142 F.4th 828, 844 (6th Cir. 2025) (cleaned up).

Poronto's single violation failure-to-train claim faces two roadblocks. *One* – he fails to supply any caselaw showing that Wellpath violated a clearly established constitutional right. And without any precedent showing that Wellpath engaged in a

11

"clearly established constitutional violation," the single violation failure-to-train claim cannot proceed. *Id.* (holding that "a failure to train theory requires it be obvious (*i.e.*, clearly established) that the conduct violates a constitutional right."); *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017).

And *two* – the single violation failure-to-train claim hinges upon one conclusory paragraph in the second amended complaint, alleging that "WELLPATH failed to train their employees and agents to handle recurring situations presenting an obvious potential for a constitutional violation." (ECF No. 53, PageID.770, ¶ 45). Since this assertion "is just a formulaic recitation of the elements of a *Monell* claim" it cannot by itself "state a plausible claim for relief." *Martinez*, 142 F.4th at 845 (quotation omitted).

Consequently, Poronto is left without a plausible theory of recovery against Wellpath under *Monell*.

C.   *Medical Malpractice*

Next, Wellpath argues that the medical malpractice claim should be dismissed because it does not assert a legitimate ground for assigning vicarious liability to the company. (ECF No. 22, PageID.227).

To establish medical malpractice at the pleading stage, the plaintiff must plausibly allege (1) the applicable standard of care, (2) the defendant's breach of that standard of care, (3) injury, and (4) proximate causation between the alleged breach

and the injury. *Rock v. Crocker*, 499 Mich. 247, 255 (2016). Wellpath may be held directly liable for medical malpractice because of "its negligence in hiring, [and] retaining and supervising staff." *Melick v. William Beaumont Hosp.*, No. 319495, 2015 Mich. App. LEXIS 756, at *6 (Mich. Ct. App. Apr. 16, 2015); *see also Cox v. Bd. of Hosp. Managers for City of Flint*, 467 Mich. 1, 11 (2002). It may also be held "vicariously liable for the negligence of its agents." *Melick*, 2015 Mich. App. LEXIS 756, at *6.

The second amended complaint alleges that Wellpath is liable for its nurses' malpractice "pursuant to the doctrine of *respondeat superior*." (ECF No. 53, PageID.773, ¶ 51). And since the medical malpractice allegations asserted against Breen and Debus are adequate to plausibly establish liability against them, they are equally sufficient to plausibly ascribe vicarious liability to Wellpath. *See Melick*, 2015 Mich. App. LEXIS 756, at *8; *see also Nippa v. Botsford Gen. Hosp.*, 257 Mich. App. 387, 391 (2003) (stating that "under a vicarious-liability theory . . . [t]he principal is held to have done what the agent has done."). As a result, the medical malpractice claim asserted against Wellpath states a plausible claim for relief. Accordingly,

IT IS ORDERED that Wellpath's motion to partially dismiss the second amended complaint (ECF No. 56) is granted in part and denied in part.

IT IS FURTHER ORDERED that the portion of the motion seeking to dismiss the part of the *Monell* claim asserted against Wellpath (Count II) is granted. Count II is dismissed as to Wellpath only.

IT IS FURTHER ORDERED that the portion of the motion seeking to dismiss the part of the medical malpractice claim asserted against Wellpath (Count III) is denied.

Dated: December 29, 2025

s/ Robert J. White
Robert J. White
United States District Judge